# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

TRACY JACKSON,          )
                                )
        Plaintiff,       )
                                )
v.                    )    No.:   3:10-CV-153
                                )           (VARLAN/GUYTON)
TOWN OF CARYVILLE, TENNESSEE, *et al.*, )
                                )
        Defendants.     )
                                )

ULESS JOE ARNOLD,     )
                                )
        Plaintiff,       )
                                )
v.                    )    No.:   3:10-CV-240
                                )           (VARLAN/GUYTON)
TOWN OF CARYVILLE, TENNESSEE, *et al.*, )
                                )
        Defendants.     )

## MEMORANDUM OPINION

These consolidated civil actions are before the Court on the consolidated Motion for Summary Judgment [*Jackson v. Town of Caryville, Tennessee, et al.*, Case No. 3:10-CV-153, ("*Jackson*"), Doc. 25; *Arnold v. Town of Caryville, Tennessee, et al.*, Case No. 3:10-CV-240 ("*Arnold*"), Doc. 19], filed by defendants, Town of Caryville, Tennessee, Stephanie R. Smith, and Bill Widener (collectively, "defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. In the consolidated motion, defendants submit that there are no genuine issues of material fact in dispute and defendants are entitled to summary judgment as a matter of law on all claims by plaintiff Tracy Jackson ("plaintiff Jackson") and plaintiff

Uless Joe Arnold ("plaintiff Arnold") in their respective complaints. Plaintiff Jackson has responded in opposition [*Jackson*, Doc. 31] to defendants' motion for summary judgment, and defendants have filed a reply to that response [*Jackson*, Doc. 35]. Plaintiff Arnold has not filed a response to defendants' motion for summary judgment.

The Court has reviewed the motion, the response and reply briefs [Docs. 25, 26, 27, 30, 31, 32, 35], and the supporting documents and exhibits, including the audio CD submitted by plaintiff Jackson. After careful consideration, and for the reasons explained herein, the Court will grant, in part, defendants' motion for summary judgment [*Jackson*, Doc. 25; *Arnold*, Doc. 19] to the extent that plaintiffs' claims arising under federal law will be dismissed. Because the claims over which the Court has original jurisdiction will be dismissed, plaintiffs' remaining state-law claims will be remanded to state court.

## I.    Facts and Procedural History

### A.    Procedural History

Plaintiff Jackson filed suit against the Town of Caryville, Tennessee ("Caryville"), Detective Stephanie Smith ("Detective Smith"), and chief of police Bill Widener ("Chief of Police Widener") [*Jackson*, Doc. 1].[1]  In her complaint, plaintiff Jackson claims that defendants violated her constitutional rights under the Fourth and Fourteenth Amendments, committed violations of 42 U.S.C. § 1983, § 1986, and § 1988[*Id.*].  Plaintiff Jackson also

---

[1]Plaintiff Jackson filed her complaint in federal court. In that complaint, she initially asserted claims against the Caryville Police Department and the 8th Judicial District Drug Task Force [*Jackson*, Doc. 1]. These defendants were previously dismissed by order of the Court [*Jackson*, Docs. 13, 19].

asserts state-law claims for a violation of Tenn. Code Ann. § 8-8-302, false arrest/imprisonment, and negligence [*Id.*]. Plaintiff Arnold filed suit in state court against Caryville and Detective Smith, and defendants removed the action to this Court [*Arnold*, Doc. 1]. In his complaint, plaintiff Arnold asserts claims primarily arising under state-law, including claims for arrest without probable cause, false arrest/imprisonment, assault and battery, negligence (including negligent infliction of emotional distress), and intentional infliction of emotional distress [*Id.*]. Upon motion of defendants, who asserted that plaintiffs' claims in their respective complaints arise out of the same transaction and occurrence, involve the same defendants, and contain the same allegations of wrongdoing, the Court consolidated these cases for case management, pretrial discovery, and trial [*Jackson*, Doc. 14].[2]

**B.     Facts**

In early 2009, the Caryville police department began receiving anonymous complaints and tips, both in person and via the telephone, regarding allegations of illegal drug activity by employees at the Eagles Nest Bar (the "Eagles Nest") located in Caryville [Doc. 25-7, pp. 8, 14, 28-29]. Detective Smith, a drug investigator with the Caryville police department, knew of these anonymous complaints and tips regarding the Eagles Nest and conducted the Caryville police department's undercover investigation [*Id.*, pp. 2, 6, 14]. Detective Smith is a certified police officer who received training in undercover drug

---

[2]Neither plaintiff filed a response to defendants' motion to consolidate.

operations from the 8th Judicial Drug Task Force, Walters State Police Academy, and the Town of Caryville [*Id.*]. She also has experience in undercover drug operations from her previous employment with the 8th Judicial Task Force and other police departments, including supervising approximately one-hundred (100) undercover operations [*Id.*, pp. 2-4, 16].

Prior to the Eagles Nest investigation, Cynthia Drummonds ("Drummonds") was arrested by Detective Smith on a criminal charge of promoting the manufacture of methamphetamine [*Id.*, pp. 9-10]. Following that arrest, Detective Smith asked Drummonds whether she had any information regarding illegal drug activity by employees at the Eagles Nest [*Id.*, p. 10]. Drummonds told Detective Smith that she knew drugs were sold out of the Eagles Nest by the owner, plaintiff Arnold, and by other employees [*Id.*]. Drummonds, whose criminal charge was still pending, agreed to be a confidential informant for the Caryville police department [Doc. 26, ¶ 4]. Detective Smith testified that given the pending criminal charge, Drummonds would get a secondary benefit from working as a confidential informant, but that she would receive only expense money for this role and no financial incentive [Doc. 25-7, p. 10].

Before using Drummonds as a confidential informant, Detective Smith consulted with Chief of Police Widener and Mike Ripley, an assistant district attorney ("Attorney Ripley") [*Id.*, pp. 9-12, 25]. Seeking approval from the assistant district attorney's office prior to using a confidential informant is consistent with the normal practices of the Caryville police department [*Id.*, pp. 10-12]. Attorney Ripley and Chief of Police Widener approved

4

Drummonds as a confidential informant for the Eagles Nest investigation [*Id.*, pp. 10-12, 25].

Before the investigation began, Detective Smith had a background check performed on

Drummonds, including an NCIC, warrant, and fingerprint check [*Id.*, p. 24; Doc. 26, ¶¶ 5,

6]. The detective also told Drummonds that she must tell the truth and follow a code of

conduct, which Drummonds agreed to [Doc. 25-7, p. 20]. At the commencement of the

investigation, plaintiff Jackson was not an express target [*Id.*, p. 4].

The undercover investigation of the Eagles Nest was conducted in April 2009 and

included several controlled drug buys [Doc. 26, ¶ 9]. Before each buy, Detective Smith met

with Drummonds, searched her car and her person for drugs or contraband, and equipped

Drummonds with hidden audio recording equipment [Doc. 25-7, pp. 21- 23]. Detective

Smith also debriefed with Drummonds immediately after each buy, at which time

Drummonds told Detective Smith the circumstances surrounding each buy and gave the

detective any evidence she obtained during the buy [*Id.*].

On April 13, 2009, Drummonds participated in a controlled buy at the Eagles Nest

[Doc. 26, ¶ 10]. Immediately after the buy, Drummonds met and debriefed with Detective

Smith. Drummonds related to the detective that while at the Eagles Nest, she spoke with

Valerie Phillips ("Phillips") regarding a drug deal [*Id.*, ¶¶ 11, 12]. According to Drummonds,

Phillips then conferred with a "blonde woman," whom Drummonds did not know, and with

plaintiff Arnold [*Id.*]. Drummond told Detective Smith that she saw plaintiff Arnold nod his

head in agreement to the drug deal and that Phillips and the blonde woman went into the

women's bathroom [*Id.*]. Drummonds stated that Phillips and the blonde woman came out

5

of the bathroom shortly thereafter and Phillips took Drummonds outside and the two exchanged drugs and money [*Id.*]. Drummonds told Detective Smith she did not know the blonde woman. Detective Smith showed Drummonds a photograph of plaintiff Jackson, and Drummonds confirmed that the photograph of plaintiff Jackson was the "blonde woman" she saw with Phillips [*Id.*, pp. 14-15; Doc. 27, ¶ 17]. Plaintiff Jackson testified at her deposition that she had blond hair in April 2009 [Doc. 31-1, p. 14].

Plaintiff Jackson asserts that Drummonds did not identify her until prompted to by Detective Smith. She asserts that she was not at the Eagles Nest on April 13, 2009, that she was not an employee of the Eagles Nest, but only filled in at the bar on two occasions, and that there were two other blonde women apart from plaintiff Jackson who worked at the Eagles Nest in April 2009 [Doc. 31-1].

Drummonds participated in two other controlled drug buys at the Eagles Nest, one on April 15, 2009, and one on April 30, 2009 [Doc. 26, ¶¶ 13, 15, 16]. Immediately after the buy on April 15, 2009, Drummonds met with Detective Smith and told her that she spoke to plaintiff Arnold and Kevin Lawson ("Lawson") at the Eagles Nest regarding a drug deal [*Id.*, ¶¶ 14, 15]. Drummonds related to Detective Smith that Lawson spoke to an unidentified person and that Lawson and Drummonds exchanged drugs and money in plain view of plaintiff Arnold [*Id.*]. Immediately after the buy on April 30, 2009, Drummonds met with Detective Smith and told the detective that while at the Eagles Nest, she had spoken with David Durkee ("Durkee"), whom Drummonds believed to be the manager [*Id.*, ¶¶ 16, 17, 18]. Drummonds related to the detective that she spoke to Durkee about purchasing drugs

6

and pills and that Durkee asked plaintiff Arnold if he had any more pills [*Id.*]. Drummonds stated that Durkee and plaintiff Arnold conferred with her and that Drummonds and Durkee exchanged drugs and money [*Id.*]. Drummonds stated that plaintiff Arnold was present and involved in the drug transaction [*Id.*].

Drummonds recorded each of the April 2009 controlled buys on hidden audio recording equipment [*Id.*, ¶ 8]. According to Detective Smith, she attempted to corroborate the information Drummonds provided, including noting that the information was consistent with the anonymous complaints and tips received by the Caryville police department prior to the investigation [Doc. 25-7, pp. 13-16]. Detective Smith also ran a criminal history report for plaintiff Jackson, a report which revealed a lengthy record [*Id.*, p. 43; Doc. 27, ¶ 17]. In addition, Detective Smith spoke with Phillips following the April 2009 buys and Phillips confirmed the identities of plaintiffs Jackson and Arnold as persons involved in drug activities at the Eagles Nest, including referring to "Tracy"[3] as someone who worked at the Eagles Nest and who "sold a little" [Doc. 25-7, pp. 19-20; Doc. 31-6, p. 6]. Given the information supplied by Drummonds and Detective Smith's corroboration of that information, Detective Smith filed affidavits of complaints against plaintiffs Jackson and Arnold for involvement in illegal drug activities at the Eagles Nest [Docs. 27-1, 27-2, 27-3, 27-4]. The affidavits of complaints were executed and plaintiffs were arrested, along with several other individuals [*Id.*]. The criminal charges against plaintiffs Jackson and Arnold

---

[3]"Tracy" is plaintiff Jackson's first name.

7

were ultimately dismissed, although criminal convictions of others did result [*Id.*, ¶¶ 18, 19].

Detective Smith had no involvement in the dismissal of the charges [*Id.*].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question

8

for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

### A. Federal Claims

#### 1. Fourth Amendment Claims

"[Section] 1983 by its terms[,] does not create any substantive rights but rather merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quotation and citation omitted). To prevail on a § 1983 claim, a plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001).

The U.S. Supreme Court has held, however, that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). That defense, qualified or "good faith" immunity, which defendants assert in this case, "is

an affirmative defense that must be pleaded by a defendant official." *Id.* at 815. To determine whether an officer is entitled to qualified immunity, the U.S. Court of Appeals for the Sixth Circuit follows a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Causey v. City of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (internal citation omitted)).[4]

---

[4]As the Sixth Circuit explained in *Estate of Carter*:

> Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 533 U.S. 194 (2001). *Compare Dunigan v. Noble*, 390 F.3d 486, 491 n.6 (6th Cir. 2004) (taking the two-step approach), *with Sample v. Bailey*, 409 F.3d 689, 696 n.3 (6th Cir. 2005) (taking the three-step approach). The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (internal quotation omitted). In cases subsequent to *Saucier*, the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g., Brosseau v. Haugen*, 543 U.S. 194 (2004); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis. In many factual contexts, however, including this one, the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable. *Cf. Champion*, 380 F.3d at 905.

408 F.3d at 311 n.2. Because, as found *infra*, the Court finds that defendants did not violate a constitutional right of plaintiffs, it is unnecessary to address the "clearly established" prong. *See, e.g., Causey*, 442 F.3d at 528 (following the two-step test because the plaintiffs failed to establish that the officers violated their Fourth Amendment rights to be free from unreasonable searches).

Both plaintiffs claim that defendants violated their constitutional rights under the Fourth Amendment because their arrests were without probable cause.[5]

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007)); *Criss v. City of Kent*, 867 F.2d 259, 262-63 (6th Cir. 1988) (describing and analyzing probable cause). In determining whether police had probable cause for a plaintiff's arrest, courts are directed to apply a totality of the circumstances test. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). The U.S. Supreme Court has stated several circumstances that potentially bear on a probable cause determination premised on the tip of a confidential informant: the reliability of the informant; the basis of the informant's knowledge; and any police corroboration of the informant's tip. *Id.* at 238. *See also United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003).

---

[5]Plaintiff Jackson alleges a violation of the Fourteenth Amendment premised on her arrest. However, a claim pursuant to § 1983 for an alleged violation of a constitutional right in regard to an arrest is properly analyzed under the Fourth Amendment, not the Fourteenth Amendment. *See Henderson v. Reyda*, 192 F. App'x 392, 2006 WL 2220981, at *3-*4 (6th Cir. Aug. 3, 2006) (finding that the district court properly construed the plaintiff's due process claims based on the plaintiff's allegation of "unlawful force" under the Fourth Amendment, not the Fourteenth Amendment's due process clause); *see also Wilson v. City of Livermore, Kentucky*, 1 F. App'x 334, 2001 WL 45106, at *2-*3 (6th Cir. Jan. 9, 2001) (holding that the plaintiff's § 1983 claim for malicious prosecution was properly analyzed under the Fourth Amendment and not the plaintiff's reference to his substantive due process rights under the Fifth Amendment). Accordingly, the Court will not address plaintiff Jackson's claim under the Fourteenth Amendment because the proper analysis of that claim is under the Fourth Amendment.

11

### a.    Plaintiff Jackson

Defendants assert that the totality of the circumstances support a finding of probable cause for the arrest of plaintiff Jackson.  Plaintiff Jackson disagrees, asserting that the totality of the circumstances do not establish probable cause.  Plaintiff Jackson argues that the anonymous complaints and tips regarding the Eagles Nest and illegal drug activities by its employees were unrecorded and did not pertain to her.  She argues that the only factual assertion by Drummonds linking her to a drug transaction at the Eagles Nest was that someone with blonde hair went into the women's bathroom with Phillips on April 13, 2009, after which Phillips and Drummonds participated in a drug transaction.[6]  Plaintiff Jackson submits that Drummonds did not identify her as the "blonde woman" until prompted by Detective Smith, and that there were two other blonde women who worked at the Eagles Nest in April 2009 [Doc. 31-1, pp. 14-15].  She also asserts that Phillips only identified a woman to Detective Smith by the name of "Tracy," and only discussed "Tracy" as someone who had "sold a little."  Plaintiff Jackson submits that Drummonds did not report any conversations between her and the "blonde woman," that there was no indication on the audio recordings that the "blonde woman" was involved in a drug transaction, and that the "blonde woman" was not seen in the presence of or in the possession of any drugs.  Finally, plaintiff Jackson submits that the "blonde woman" was not her because she was not at the Eagles Nest on April 13, 2009 [Doc. 31-1].

---

[6]Plaintiff Jackson has blonde hair, Phillips has dark hair [Doc. 35-1].

Upon review, the Court concludes that the totality of the circumstances and the undisputed evidence show that there was probable cause to arrest plaintiff Jackson. Detective Smith relied on information obtained from Drummonds, a confidential informant, that a blond woman identified later as plaintiff Jackson participated in a drug transaction on April 13, 2009 at the Eagles Nest. Detective Smith investigated Drummonds, including conducting a background check and obtaining approval from Attorney Shipley and Chief of Police Widener, prior to using her as a confidential informant. Prior to each controlled buy, Detective Smith searched Drummonds for contraband, and the detective monitored Drummonds throughout the undercover investigation, talking to her daily, and equipping Drummonds with a hidden recording device. Detective Smith also met with Drummonds immediately after the buy on April 13, at which time Drummonds debriefed and identified plaintiff Jackson after being shown a picture by Detective Smith of a "blond woman." *See Wilson v. City of Livermore*, No. 99-6137, 2001 WL 45106, at *1-*3 (6th Cir. Jan. 9, 2001) (finding that the district court did not err in concluding that the plaintiff's arrest was supported by probable cause when the police searched the informant prior to and after a controlled drug buy and the police debriefed the informant shortly after the buy). Furthermore, the information Drummonds provided to Detective Smith was firsthand because Drummonds participated in and observed the transaction. In addition, prior to using Drummonds as a confidential informant, Detective Smith knew of the anonymous tips regarding illegal drug activity at the Eagles Nest, although none of the tips specifically mentioned Drummonds. *See United States v. Tillman*, No. 08-1364, 2010 WL 5135615, at

13

*1-*2 (6th Cir. Dec. 16, 2010) (affirming the district court's determination of probable cause premised in part on the district court's finding that the confidential informant was reliable, that the information supplied by the confidential informant was based on firsthand knowledge, and because the police knew the reputation of the establishment where the undercover investigation occurred).

The above-noted undisputed facts show that Drummonds was reliable, notwithstanding plaintiff Jackson's assertion that Drummonds received a secondary benefit due to the pending criminal charge. Rather, there is no evidence to indicate that Drummonds or the information she provided was unreliable. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 270 (2000) (noting that unlike a tip from an anonymous informant, a "tip from a known informant whose reputation can be assessed, and who can be held responsible if her allegations turn out to be fabricated[,]" is more trustworthy). Detective Smith also performed a background check on Drummonds and obtained approval from the assistant district attorney and the chief of police for using Drummonds in connection with the Eagles Nest investigation, circumstances which also indicate reliability. In addition, plaintiff Jackson has provided no evidence that Drummonds provided false or misleading information, or that Detective Smith had any reason to think the information Drummonds provided was unreliable. Furthermore, it is undisputed that Drummonds did not receive any financial incentive or financial benefit.

It is also undisputed that Drummonds provided a specific, eyewitness account of seeing a "blonde woman" enter the women's bathroom with Phillips at the Eagles Nest on April 13, 2009. Drummonds later confirmed to Detective Smith that the photograph of

14

plaintiff Jackson was of the same woman Drummonds saw on April 13, 2009. The Supreme Court has noted that a reliable confidential informant's firsthand observation and knowledge of a crime "entitles [the] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 233; *see also United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc) (stating that when a "known person . . . to whose reliability an officer attests with some detail . . . states that he has seen a particular crime and particular evidence, in the recent past," probable cause may exist to issue a warrant). It is also undisputed that Detective Smith monitored and searched Drummonds prior to and after the controlled buys and that the detective debriefed Drummonds after each controlled buy, including the one on April 13, 2009, at which time Drummonds described the drug transaction that led to the affidavit of complaint against plaintiff Jackson.

Finally, while police corroboration is not necessary when the information comes from a reliable source who has personally observed criminal activity, *see Allen*, 211 F.3d at 976, Detective Smith nevertheless verified some of the information Drummonds provided. Detective Smith spoke with Phillips regarding plaintiff Jackson, Phillips mentioned that "Tracy" (plaintiff Jackson's first name) had "sold a little," and the detective ran a criminal history report on plaintiff Jackson, which revealed that she had a criminal record.

### b.    Plaintiff Arnold[7]

The Court notes again that plaintiff Arnold has not responded to defendants' motion for summary judgment.  A non-response standing alone, however, is not determinative of whether summary judgment is appropriate.  *Aquent, LLC v. United States*, No. 08-15275, 2011 WL 1397105, at *1 (E.D. Mich. Apr. 13, 2011) (discussing the former version of Rule 56 and noting that "the non-movant's failure to respond does not relieve the movant of its burden to establish that 'the moving party is entitled to judgment as a matter of law'").  Relevant to a party's failure to respond is Rule 56(e), which provides:

> (e) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> . . . .
>
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> >
> > (4) issue any other appropriate order.

---

[7]Plaintiff Arnold has brought a claim for arrest without probable cause against Caryville and Detective Smith.  He has not asserted a claim against Chief of Police Widener.  Upon review of the complaint filed by plaintiff Arnold, and finding no reference to the U.S. Constitution or a federal statute, it is unclear whether the complaint alleges a violation of plaintiff Arnold's civil rights under federal law.  Plaintiff Arnold does, however, assert that his arrest was "without probable cause or justification" [*Id.*, ¶ 8].  This claim, liberally construed, could be interpreted as a claim pursuant to § 1983 for a violation of his constitutional rights under the Fourth Amendment.  The remainder of plaintiff Arnold's claims arise under Tennessee tort law.

Fed. R. Civ. P. 56(e).[8]   Accordingly, the Court has examined defendants' motion for

summary judgment as it pertains to plaintiff Arnold's complaint and the supporting materials

to determine if summary judgment is appropriate.  *See Aquent*, 2011 WL 1397105, at *1

(taking the same approach with respect to a plaintiff's motion for summary judgment where

the sole defendant failed to respond).

Assuming plaintiff Arnold has asserted a Fourth Amendment claim pursuant to § 1983

premised on an arrest without probable cause, the undisputed facts show that there was

probable cause to arrest plaintiff Arnold based on the information provided by Drummonds

and pertaining to plaintiff Arnold's conduct in the drug transactions occurring in April 2009

at the Eagles Nest.  This probable cause is established by the information provided by

Drummonds, a reliable confidential informant, concerning plaintiff Arnold's involvement in

three separate controlled drug buys at the Eagles Nest, on April 13, 15, and 30.  As shown

previously, there is no evidence that Drummonds or the information she provided was

unreliable.  The information provided by Drummonds regarding plaintiff Arnold shows that

he was involved in the three separate buys, including speaking with Phillips and Durkee

about illegal drugs and being present when Drummonds engaged in illegal drug transactions

with Phillips, Lawson, Durkee, and plaintiff Arnold.  Phillips also provided evidence about

---

[8]The Advisory Committee Notes for the 2010 amendments indicate that the Rule was revised
to preclude summary judgment from being granted by default, even "if there is a complete failure
to respond to the motion."  Fed. R. Civ. P. 56 advisory committee note (discussing under subdivision
(e) when a party fails to properly address another parties assertion of fact as required by 56(c)).

plaintiff Arnold's involvement in drug transactions at the Eagles Nest, evidence which confirmed the information provided by Drummonds.

Given these undisputed facts, the Court finds that there was probable cause for plaintiff Arnold's arrest and thus, his Fourth Amendment claim brought under § 1983 will be dismissed.

### 2. Claims Pursuant to 42 U.S.C. § 1986 and § 1988

Plaintiff Jackson also claims that defendants violated 42 U.S.C. § 1986 and § 1988. Plaintiff Arnold has not asserted claims under these statutes. Defendants have moved for summary judgment in regard to these claims. In her response, plaintiff Jackson has offered no argument in regard to these claims.

Section 1986 provides a cause of action against persons who have knowledge of and who fail to prevent or aid in preventing the commission of a civil rights conspiracy violation, pursuant to 42 U.S.C. § 1985. *See* 42 U.S.C. § 1986. In order to assert a cause of action under § 1986, a plaintiff is required to assert a cause of action under § 1985. *See Estate of Bing v. City of Whitehall, Ohio*, 373 F. Supp. 2d 770, 785 (S.D. Ohio 2006) ("To effectuate a cause of action under § 1986, a plaintiff must state a cause of action under § 1985."). Plaintiff Jackson's complaint contains no cause of action under § 1985 and no allegations relating to a conspiracy to violate plaintiff Jackson's civil rights. Accordingly, because there can be no claim under § 1986 without a claim of a violation of § 1985, plaintiff Jackson's § 1986 claim fails, defendants are entitled to summary judgment on this claim, and it will be dismissed.

18

Furthermore, plaintiff has no cognizable claim under 42 U.S.C. § 1988. Section 1988 is the statute providing attorneys fees and costs to a "prevailing party" in a civil rights case. *See* 42 U.S.C. § 1988. There is, however, no individual claim pursuant to § 1988. Accordingly, plaintiff Jackson's claim under this statute fails, defendants are entitled to summary judgment on this claim, and it will be dismissed.

### 3. Civil Rights Claims Against Caryville

Plaintiff Jackson alleges that Caryville had a policy and custom of inadequately and improperly investigating criminal activity and a policy and custom of inadequately and improperly training its police officers. She argues that Caryville had an official policy of allowing its employees complete discretion in using confidential informants in undercover investigations, that Caryville made the affirmative decision not to implement appropriate policies and procedures for the use of confidential informants, and that it failed to supervise and/or train employees in the use of confidential informants. She argues that Chief of Police Widener made the deliberate choice to allow employees complete discretion, rather than assuring that employees were properly trained, and that Caryville's failure to properly train Detective Smith was the actual and proximate cause of the constitutional violation suffered by plaintiff Jackson. Defendants have moved for summary judgment in regard to these municipal liability claims. Plaintiff Arnold has not alleged a municipal liability claim against Caryville.

A local government is liable under § 1983 only when the government itself commits the constitutional violation, not when the violation is committed by the government's

19

employees. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1985)). In other words, a municipality may not be held liable under § 1983 pursuant to a theory of respondeat superior. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). To succeed on a municipal liability claim, a plaintiff "must prove that the violation of a federal right occurred as the result of an illegal policy or custom." *Sabo v. City of Mentor*, No. 1:10-CV-345, 2010 WL 4008823, at *7 (N.D. Ohio Oct. 12, 2010) (citing *Monell*, 436 U.S. at 694). Additionally, the policy or custom must have been the moving force directly causing the violation. *Id.* (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997)). *See also Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir.2004) (citation omitted).

Examples of a municipal policy or custom may be shown by a plaintiff pointing to a statement by a policymaking official, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736-38 (1989), or to a custom so widespread and well-settled "as to have the force of law," *Bd. of Cnty. Commr's of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997), or to inadequate screening, training or supervision by the municipality of its employees, *Id.* (inadequate screening) and *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (inadequate training and supervision). In making a failure to train or supervise claim, the plaintiff must specifically prove that: (1) the training or supervision was inadequate for the tasks that officers must perform; (2) the inadequate training or supervision was the result of deliberate indifference;

20

and (3) the inadequacy was closely related to or actually caused the injury. *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006); *Estate of Fahner ex rel. Fahner v. County of Wayne*, —F. Supp. 2d —, —, 2011 WL 2490994, at *13 (E.D. Mich. June 22, 2011).

As demonstrated above in regard to plaintiff Jackson's Fourth Amendment claim, she has not shown facts sufficient to show that a constitutional violation occurred because she has not demonstrated that she was arrested without probable cause. *See Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) ("If the plaintiffs have failed to state a claim for violation of a constitutional right at all, then the City of Forest Park cannot be held liable for violating that right any more than the individual defendants can.").

However, even if plaintiff Jackson had shown that a constitutional violation occurred, she has failed to show that Detective Smith's training, or Caryville's training requirements, amount to a wrongful policy of total discretion or a wrongful policy of inaction or failure to implement policy safeguards. Plaintiff Jackson has not disputed that Detective Smith has training and experience in drug investigations and undercover operations, including supervising approximately one-hundred (100) undercover drug operations. Plaintiff Jackson has provided no evidence that Caryville has a history of unconstitutional arrests relating to the use of confidential informants. She has provided no evidence, facts, or information regarding the specific policies and procedures of the Caryville police department or any evidence, beyond her own assertions, that these policies and procedures amount to a deliberate indifference on the part of Caryville. Furthermore, it is undisputed that investigators with the Caryville police department had a practice of obtaining approval from

the chief of police and the assistant district attorney's office before using confidential informants and undisputed that Detective Smith complied with this practice in obtaining approval for Drummonds [Doc. 32, p. 8; Doc. 25-7, pp. 9-10].

While plaintiff Jackson asserts that Detective Smith and the present chief of police testified that Caryville should have had a policy in place for confidential informants, and that Detective Smith used her discretion to adopt Campbell County's "Confidential Source Code," the Court disagrees that these opinions and circumstances create genuine issues of material fact in regard to plaintiff Jackson's deliberate indifference claims on the part of Caryville. Plaintiff Jackson has provided no evidence that the actual training requirements and tasks performed by Detective Smith were inadequate and no evidence or law, given the circumstances of this case, that lack of a written policy or procedure regarding confidential informants amounts to an unconstitutional policy of discretion. Finally, while plaintiff Jackson asserts that Detective Smith failed to sufficiently corroborate the information provided by Drummonds, the Court notes that the Sixth Circuit has stated that police corroboration is unnecessary when information is supplied by a reliable confidential informant who was personally involved in the criminal activity. *See United States v. Dyer*, 580 F.3d 386, 390-92 (6th Cir. 2009) (noting that when it has been shown that there is sufficient indicia of reliability in regard to a confidential informant, there is no requirement of substantial independent policy corroboration); *Allen*, 211 F.3d at 976.

### B. Plaintiffs' State-Law Claims

Plaintiff Jackson has alleged a state-law claim for a violation of Tenn. Code Ann. § 8-8-302 and claims for violations of the state-law torts of false arrest/imprisonment and negligence. Plaintiff Arnold has alleged state-law claims for arrest without probable cause, false arrest/imprisonment, assault and battery, negligence (including negligent infliction of emotional distress), and intentional infliction of emotional distress.

The Court's analysis in regard to plaintiffs' federal claims in these lawsuits effectively disposes of those claims over which this Court has original jurisdiction. Under these circumstances, and pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiffs' remaining state-law claims. Accordingly, in the exercise of its discretion and in the interests of comity, and noting that plaintiff Arnold's claims arise almost solely under state-law and that his complaint was initially filed in state court and was removed to this Court, the Court declines to exercise continuing pendent jurisdiction over plaintiffs' state-law claims in these consolidated cases. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966). Thus, plaintiffs' state-law claims will be remanded to state court.

## IV. Conclusion

For the reasons explained herein, defendants' motion for summary judgment [*Jackson*, Doc. 25; *Arnold*, Doc. 19] will be **GRANTED in part** in that the Court finds summary judgment warranted with respect to the 42 U.S.C. § 1983 claims alleged by plaintiff Tracy Jackson and plaintiff Uless Joe Arnold for violations of the Fourth Amendment for arrests

without probable cause.  Plaintiff Tracy Jackson's 42 U.S.C. § 1986 and § 1988 claims will also be dismissed, as well as her 42 U.S.C. § 1983 claim alleging municipal liability on the part of the Town of Caryville, Tennessee.  Because the claims over which the Court has original jurisdiction will be dismissed, plaintiffs' remaining state-law claims will be remanded to state court and these cases will be closed.  An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE